81 N.J. Super. 509 (1963)
196 A.2d 241
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOSEPH VON ATZINGER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 2, 1963.
Decided December 19, 1963.
*511 Before Judges CONFORD, FREUND and SULLIVAN.
Mr. Morton Hirschklau (assigned counsel), argued the cause for appellant.
Mr. Archibald Kreiger, Assistant Prosecutor, argued the cause for respondent (Mr. John G. Thevos, Passaic County Prosecutor, attorney).
The opinion of the court was delivered by CONFORD, S.J.A.D.
Defendant appeals his conviction of armed robbery of a Paterson restaurant on the evening of January 29, 1956. We have concluded there must be a reversal principally because of the prejudicial effect of remarks in summation by the assistant prosecutor (not counsel who argued this appeal). However, we also discuss other points of appeal involving questions which may arise at the retrial, as well as the contention that defendant was entitled to a dismissal of the indictment because he was denied a speedy trial contrary to his constitutional rights.

I.
Defendant contends that in view of his repeated requests for an immediate trial soon after return of the indictment filed February 9, 1956, the delay in trying him until May 1959 warranted dismissal of the indictment because of the denial of "the right to a speedy * * * trial" ordained by Article 1, paragraph 10 of the Constitution.
*512 Defendant was apprehended and prosecuted in Virginia for a crime committed there the day after the alleged occurrence in New Jersey for which the present indictment was returned. He was confined in Virginia continuously under sentence for the offense noted until and after the instant trial, having been rendered by Virginia to the New Jersey authorities for the temporary purpose of this trial by request of the Governor of New Jersey, pursuant to N.J.S. 2A:160-33. However, defendant had written to the Acting Prosecutor of Passaic County from his place of detention in the spring of 1956 requesting a "speedy trial" on this and other indictments, but without result. He also applied for habeas corpus in the summer of 1956, one of the grounds asserted being that he had not been accorded a speedy trial on this and other indictments. This was denied by the Passaic County Court on the ground that the grievance was not reviewable on habeas corpus. (This decision was never appealed.) Defendant in 1958 filed a motion with the court addressed to other indictments, but not to that here involved. We are told that only after the institution by defendant of federal court proceedings in 1958 did the State set in motion the extradition proceedings that culminated in the trial.
The facts stated indicate that the office of the Prosecutor may well have been remiss in not bringing the defendant to trial earlier than three and one-third years after return of the indictment. The important policy underlying the constitutional directive for a speedy trial should always be served by prosecuting officials. The defendant's incarceration in another state was no excuse to delay his trial since the extradition procedure ultimately followed to bring defendant to New Jersey was always available, had the Governor been requested to employ it. See Rau v. McCorkle, 47 N.J. Super. 36 (App. Div. 1957). See also State v. Patton, 76 N.J. Super. 353, 358 (App. Div. 1962). To concede this much, however, is not to concede error in the denial of the motion to dismiss the indictment. State v. Smith, 10 N.J. 84 (1952). Under that leading case there is no absolute right of dismissal for delay *513 but only a right by defendant to apply for the setting of a specified date for trial under R.R. 3:11-3(b). Upon failure of the Prosecutor to go to trial on the date set, the Assignment Judge may dismiss, with the effect of an acquittal. Ibid. Cf. State v. Chirra, 79 N.J. Super. 270 (Law Div. 1963), applying against the State the sanctions of N.J.S. 2A:159A-1 et seq. ("Interstate Agreement on Detainers," L. 1958, c. 12), which was not here invoked by defendant.
The court not having at any time set a day certain for trial in this matter other than that on which the case was actually tried, and the Prosecutor therefore not having been in violation of an order of that nature, the Smith case precluded dismissal of the indictment on the ground asserted.
It may be noted, in passing, that while defendant asserts he was prejudiced by the unavailability at trial of witnesses who were available earlier, yet when he was permitted at the trial in another connection to develop that subject he failed to particularize the witnesses and the materiality or relevance to his defense of the testimony they would purportedly have adduced if available. In any event, since there is to be a retrial, defendant will have another opportunity to obtain any necessary witnesses.

II.
On direct examination defendant testified to a number of convictions of crime entered against him at various times, including several in January 1945. At that time he was 17 years of age. The testimony was that the 1945 crimes involved were burglary, breaking and entering, and larceny. It is not contended that these were prosecuted as juvenile offenses, the statute at that time fixing the age of persons precluded from prosecution for crime at "under 16 years of age." However, the statutory age was raised to 18 by L. 1946, c. 77, N.J.S. 2A:4-14, N.J.S.A. Defendant argues that it was consequently plain error for the court to charge the jury that it might give consideration to all the crimes in *514 relation to the issue of defendant's credibility, insofar as the "crimes" alluded to included any committed before he attained the age of 18. The case of State v. Wolak, 26 N.J. 464 (1958), would sustain the defendant's position were the 1945 convictions properly construable as an "adjudication upon the status of a child," as the pertinent statutes read both in 1945 and 1959. R.S. 9:18-32; N.J.S. 2A:4-39. We cannot concur in that premise. The quoted phrase is a deliberately worded term of art. The issue is not simply one of retrospective or prospective application of a statute. Rather it is whether the mere change of the juvenile age classification by statute in 1946 from 16 to 18 operated to convert what was in fact and in law in 1945, when it took place, a conviction of a crime, into an "adjudication upon the status of a child," and therefore precluded under the act from use to affect the credibility of the person involved. Our view is in the negative. To the same effect, see State v. Buffa, 51 N.J. Super. 218, 233 (App. Div. 1958), affirmed 31 N.J. 378 (1960), cert. denied 364 U.S. 916, 81 S.Ct. 279, 5 L.Ed.2d 228 (1960). There was no error in the charge.

III.
Defendant assigns as error the admission in evidence over his objection of testimony by two detectives of an alleged oral admission by him to them of all the essential details of the crime shortly after it occurred, when he was apprehended in Virginia. It is argued that the basic rule requiring the State to prove the voluntary nature of a confession as a condition of its admissibility is as fully applicable to oral as to written confessions. In respect of a written but unsigned statement admitting harmful facts (short of a complete confession), and based on information orally given by the defendant, we expressed the view, in dictum, in State v. Buffa, supra, that the requirement of proof of voluntariness "is clearly indicative of a more just result, and in keeping with present trends for fair play and justice in criminal prosecutions." *515 (51 N.J. Super., at p. 231.) We think this philosophy applies to oral as well as written confessions and that proof of voluntariness should be a requisite to admissibility in either case. The State concedes this much in its brief, but argues that since the defendant here denied he made any such statement to the detectives at all, and did not base his objection at the trial on the precise ground now asserted, the failure of the court to require preliminary proof of voluntariness does not call for reversal.
As to the latter point, no authority is cited by either side in relation to the issue of "plain error" as to so fundamental a matter as proof of voluntariness of a confession. We need not decide the question, as we are reversing primarily for another reason, and the trial court on the retrial will have the benefit of our views on the meritorious question. We cannot, however, agree with the State's position that the defendant's testimony that he never made any statement of itself operates to excuse the State from proving voluntariness when offering proof of the statement on its affirmative case. If the defendant's stated testimony is not believed by the fact-finder he is obviously prejudiced by the admission of an involuntary statement. Compare Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); State v. Siciliano, 36 N.J. Super. 334, 346 (App. Div. 1955), affirmed on other grounds, 21 N.J. 249 (1955).

IV.
In summation to the jury the Assistant Prosecutor (not appellate counsel) delivered himself of the following remarks:
"Let's get to men like Sergeant Ventimiglia and Detective Resch. I have worked with them in so many matters, I only trust that we may have them for a long time, and others like them, to protect you and me and my family so that bums and hoods like this don't come into your place, where you have a perfect right to be, secure in your homes and your businesses  this is America. You're working in a *516 restaurant. You're serving a man a sandwich. A punk like that walks in with a gun. * * *
In your heart, if you feel like that, let him go, so he can do it to you and you and you and me, God forbid.
I don't want to wax eloquent myself, but every time I heard a plea that goes to your hearts instead of your heads  you are the ones we are protecting  society  and I represent society.
And you are making it possible for a repetition of this type of act." (Emphasis added)
Defendant contends these comments, particularly the characterization of him as a "bum," "hood," and "punk" were so prejudicial and improper as to constitute plain error. We agree. We do not have to consult the dictionary for the meaning of these invidious epithets from the current argot or to assay their likely prejudicial effect upon a jury which knew that the defendant had a prior criminal record. This line of comment squarely put the defendant's character into the case as an issue, contrary to the enjoinder that "in a criminal case the prosecution cannot offer evidence of the character or reputation of the defendant unless the defendant himself raises the issue." See State v. Welsch, 29 N.J. 152, 156 (1959), where there was a reversal because of a comment by the prosecutor deemed violative of that principle, and constituting plain error under the circumstances.
It is dubious enough under the best of circumstances whether the average jury confines its consideration of a defendant's past criminal record to its effect upon his credibility, as is the evidential limitation. See Report of the New Jersey Supreme Court Committee on Evidence (1963), pp. 102-103. But when the Prosecutor tells the jurors they are dealing with a bum, hood, and punk, terms plainly associated by the average person with an habitual lawbreaker, they are obviously being invited to consider his past criminal record as evidence of his criminal character and consequently indication not only of present guilt but also of his likelihood to go out and commit fresh crimes if not convicted. This is unabashed subversion of the legal limitations on the evidential utility of past convictions. See State v. Driver, 38 N.J. 255, 292 (1962). *517 The court in that case described a comparable State summation as "an aggravated appeal to prejudice."
The State, while frankly conceding at oral argument the impropriety of counsel's remarks, seeks to justify them as invited by the improper appeal by defense counsel to the jury's sympathies on the basis that defendant still had six years to serve on the Virginia conviction. But the argument will not hold. As the Assistant Prosecutor told the jury, he "represent[ed] society," and an improper appeal by the other side did not justify an unfair broadside by him, the constituted representative of the State for the administration of fair and objective criminal justice. As noted by the court in State v. Welsch, supra, 29 N.J., at p. 158, it was his proper course to object to improper comments by the defense, and have the jury instructed by the court, but not to indulge in a retaliatory diatribe of so prejudicial a nature. See also State v. West, 29 N.J. 327, 338 (1959).
We are satisfied that the State's summation undermined the defendant's right to a completely fair trial. State v. Siciliano, supra, 21 N.J., at pp. 262, 263. This conclusion, combined with the factors of extended delay of trial and absence of proof of voluntariness of the oral confession, leads us to the view that the interests of justice will best be served by a retrial of the case.
Other points made by defendant are deemed without substance and require no discussion.
Reversed and remanded for a new trial.