91 N.J. Super. 420 (1966)
221 A.2d 20
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
FRANK BRUCE CHRISTIE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 16, 1966.
Decided June 7, 1966.
*421 Before Judges CONFORD, KILKENNY and LEONARD.
Mr. Sidney H. Grad argued the cause for appellant.
Mr. Joseph P. Merlino, Assistant County Prosecutor, argued the cause for respondent (Mr. Vincent Panaro, Mercer *422 County Prosecutor, attorney; Mr. Gerald Patrick Higham, Assistant County Prosecutor, on the brief).
PER CURIAM.
A jury in the Mercer County Court found defendant guilty of armed robbery, N.J.S. 2A:141-1 and N.J.S. 2A:151-5. He was sentenced to State Prison for a term of 12 to 15 years on the robbery charge and a term of two to three years additionally for being armed, the latter sentence being suspended. The 12 to 15-year sentence was to run consecutively to defendant's present Bordentown Reformatory sentence.
In his appeal from the judgment of conviction defendant claims that the trial court committed plain and prejudicial error affecting his substantial rights (1) in the manner in which the court propounded questions to him and his witnesses; (2) in admitting evidence of his prior conviction and place of confinement at the time of trial; (3) in charging the jury with reference to the effect of prior convictions, and (4) in the cumulative effect of the combination of trial errors.
The facts are simple. On November 6, 1964, at approximately 2:30 P.M., the Town Finance Company, located on Princeton Avenue in Trenton, was held up by a lone robber, who forcibly took $300 by violence or putting in fear Loretta Stout, secretary of the company, and Charlotte Tobias, an employee. They positively and unshakingly identified defendant at the trial as the perpetrator. He took the stand and denied the accusation. His defense was alibi, and several witnesses were called by him to corroborate that he was elsewhere when the crime was committed.
The jury evidently believed the State's witnesses and disbelieved defendant and his witnesses. His past criminal record was elicited in his cross-examination for the limited purpose of affecting his credibility as a witness. There was sufficient evidence to justify the verdict. The only issue on appeal is whether the alleged trial errors unduly prejudiced the defendant and require a reversal of the judgment.

*423 I.
Defendant quotes several passages from the testimony at trial which he asserts are illustrative of the trial judge's impatience, interference and participation in the trial to his detriment.
As to the charge of judicial impatience, reference is made to six or seven instances in the trial record where the trial judge intervened to stop further questioning or to comment, such as:
1. "She has positively identified this man; she says this is him."
2. "I think she's covered that. She said about three times this is the man. This is the man she identified, stared at him, saw him and identified him."
3. "She has answered it. This is it; that's enough."
4. When a defense witness was asked if she knew where defendant went and answered: "No I don't know where he went. He said he was going home," the trial judge, without any objection by the prosecutor, stated: "That will be stricken. You just said you didn't know where he went, then you say he was going home."
5. "All right. Say so. Don't add something to it."
6. "That is not the question."
7. "No, no, that's not the question."
Not all of these observations were necessarily improper. If the only bases for a reversal were these several instances scattered over a two-day trial, we would not reverse in the face of the jury's obvious belief of the testimony of the two eyewitnesses who unequivocally identified defendant as the perpetrator of the holdup.
Defendant refers to three instances during the trial, when the trial judge intervened to ask questions which implied judicial disbelief in the testimony of defendant or one of his witnesses. In the first of such instances, a defense witness, called to corroborate defendant's alibi, testified that he was with defendant at "eighteen after three." The trial judge intervened to ask, "Eighteen after three?" The witness responded, "Yes, sir." The trial judge persisted, "Not twenty, not fifteen, eighteen." In the second instance, defendant *424 had testified on direct examination, "* * * and I asked her for something to eat. She told me `go into the refrigerator and get it.'" The trial judge thereupon asked, "Didn't you just say you had eaten at 12:00-12:15?" Again, on cross-examination, defendant answered the prosecutor's question concerning money by saying, "Sometime I had odd jobs such as doing work around people's yards and things like that * * *." To this, the trial judge immediately interposed, "In November?"
A jury could reasonably infer from these interventions by the trial judge his disbelief of defendant and defense witness. It would have been better to have allowed the prosecutor to ask these questions, to spotlight these possible weaknesses in the defense testimony. Judicial inquiry, especially if accompanied by a facial expression of disbelief or other gesture or tone of voice  which the dry record herein cannot reveal, if such occurred  may well be suggestive of the trial judge's disbelief and may have a critical impact upon the jurors. State v. Guido, 40 N.J. 191, 207-208 (1963). In the words of the Supreme Court in that case, "Despite the inherent difficulty of judging the complaints before us, we are persuaded that in some instances the trial court intervened unnecessarily and in a way that could prejudice the jury's approach to the factual issues." (at p. 208)

II.
When defendant testified in his own defense he was questioned on cross-examination as to his prior convictions of crime. This was proper under our present rules of evidence and statutory law for the purpose of affecting his credibility as a witness. State v. Garvin, 44 N.J. 268, 275 (1965); N.J.S. 2A:81-12. However, after the prosecutor had asked defendant about two convictions, the question was asked: "Where are you presently residing?" Defendant answered: "Bordentown Reformatory." Defendant's attorney objected and, after a mistrial was suggested, his motion was *425 denied. When he inquired whether the trial judge would instruct the jury to disregard the question and answer, the requested instruction was denied, the court stating:
"He has admitted the conviction, two convictions. I think the jury is entitled to know that he is now serving time for the second conviction. They can consider that when they decide whether or not they believe him, which they must do."
This ruling constituted prejudicial error because it allowed the State to emphasize that defendant was presently confined to prison. The confinement was pursuant to a sentence to Bordentown Reformatory for an indeterminate term. The criminal record would not disclose that defendant was still in jail at the time of the trial. Since the answer had been given before objection made, defendant was entitled at least to the cautionary instruction requested by his attorney. In failing to give it, prejudicial error was committed.

III.
At oral argument we requested supplemental briefs as to whether the trial court erred in telling the jury that "in considering the credibility or believability of the defendant you can take into consideration, and should, his criminal record which you have heard this morning." (Emphasis added) Adding: "I don't think I need to dwell on it. It's in evidence and you heard it. There is no question about it and you should consider that in arriving at your verdict." (Emphasis added)
The instruction was inadequate and had a capacity to mislead the jury. Prior convictions may and should be considered by the jury for the sole purpose of determining the credibility of a witness and for no other purpose whatever. The jury should then be told: "Having done so, you may or may not conclude that his credibility was affected thereby." See State v. Baker, 90 N.J. Super. 38, 40 (App. Div. 1966), correcting an inaccurate statement of the law in *426 the earlier case of State v. McNair, 59 N.J. Super. 453, 458-459 (App. Div. 1960).

IV.
While some of the trial errors herein, standing alone, may have been insufficient to warrant a reversal of the judgment of conviction, we are satisfied that in their totality there was a manifest denial of justice. Where prejudicial evidence is placed before the jury or prejudicial error committed, there must be a reversal notwithstanding the existence of other competent evidence to convict. See State v. Green, 46 N.J. 192 (1965), State v. Ripa, 45 N.J. 199 (1965), and State v. Tassiello, 39 N.J. 282 (1963).
The judgment of conviction is reversed and the matter is remanded for a new trial.