STATE of North Dakota, Plaintiff and Appellee,

v.

Phillip W. KANIA, Defendant and Appellant.

Cr. No. 940.

Supreme Court of North Dakota.

Nov. 23, 1983.

Mervin D. Nordeng, Asst. State's Atty., Fargo, for plaintiff and appellee.

Bruce C. Britton, Fargo, for defendant and appellant.

SAND, Justice.

The defendant, Phillip Kania (Kania), appealed from a jury verdict finding him guilty of forgery and from an order dated 23 March 1983 extending the time for trial. Kania's sole contention on appeal was that the charge against him was not tried within the time specified in North Dakota Century Code Ch. 29–33, the Uniform Mandatory Disposition of Detainers Act (the Act).

The Act provides in pertinent part:

"Any person who is imprisoned in a penal or correctional institution of this state may request final disposition of any untried indictment, information, or complaint pending against him in this state. The request shall be in writing addressed to the court in which the indictment, information, or complaint is pending and to the prosecuting official charged with the duty of prosecuting it, and shall set forth the place of imprisonment." NDCC § 29–33–01(1).

"The request shall be delivered to the warden or other official having custody of the prisoner, who shall forthwith:

"1. Certify the term of commitment under which the prisoner is being held, the time already served on the sentence, the time remaining to be served, the good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole board relating to the prisoner; and

"2. Send by registered or certified mail, return receipt requested, one copy of the request and certificate to the court and one copy to the prosecuting official to whom it is addressed." NDCC § 29–33–02.

"Within ninety days after the receipt of the request and certificate by the court and prosecuting official or within such additional time as the court for good cause shown in open court may grant, the prisoner or his counsel being present, the indictment, information, or complaint shall be brought to trial; but the parties may stipulate for a continuance or a continuance may be granted on notice to the attorney of record and opportunity for him to be heard. If, after such a request, the indictment, information, or complaint is not brought to trial within that period, no court of this state shall any longer have jurisdiction thereof, nor shall the untried indictment, information, or complaint be of any further force or effect, and the court shall dismiss it with prejudice." NDCC § 29–33–03.

On 20 December 1982 Kania, while an inmate at the North Dakota State Penitentiary, filed a request pursuant to the Act for disposition of the forgery charges pending against him in Cass County. A copy of the request was mailed by certified mail to the state's attorney and the clerk of court of Cass County district court. The janitor of the courthouse signed the receipt for these documents.

On 27 December 1982 the state's attorney presented a request for temporary custody of Kania to County Judge Cooke, which was approved. The request stated that the state's attorney planned to bring the defendant to trial within the time specified in the Act.[1] Kania appeared before Judge Cooke, of the county court, on 17 January 1983, at which time the court advised him of his rights, appointed a public defender to represent him, and set the preliminary hearing for 31 January 1983.

At the preliminary hearing on 31 January Kania was bound over to Cass County district court. The court set an arraignment date for 8 February.

At the arraignment on 8 February an information dated 31 January 1982 charging the defendant with forgery was filed with the clerk of Cass County district court. Kania appeared before District Judge McGuire and pleaded not guilty. At that time defense counsel advised the court that his law firm was representing Kania's brother on another charge that included Kania and that this posed a potential conflict of interest. The court then appointed a new defense counsel that was satisfactory to the defendant. The State informed the court that Kania had filed a request under the Act and suggested that he be tried by 20 March. After a discussion with the defendant, climaxing in a request that the judge not proceed with the trial, Judge McGuire recused himself from the case. The court, however, did not set a trial date, but suggested that Kania's new counsel contact the clerk's office to set an appropriate date.

On 11 February the district court administrator, Mark Hinnen, wrote a letter to Kania's counsel and the state's attorney stating that Kania had not filed his request with the district court and that the court was unaware of the request until the arraignment on 8 February; and as a result the trial would be scheduled within ninety days from the arraignment.

1. Judge Cooke thus became aware of the request under the Act. The instrument signed by the state's attorney and by the county court judge is not in the clerk of court's record, but was in the appellant's appendix. The clerk's record begins with the transcript of proceedings in the county court which was entered on 8 February 1983.

On 23 March this case came before Judge Backes which resulted in a discussion between the court and counsel pertaining primarily if and to whom the request for final disposition of the charge against the defendant was sent. Kania produced two return mail receipts dated 24 December 1982—one acknowledged receipt for the state's attorney and the other for the clerk of court. The receipts were signed by a janitor at the Cass County courthouse. Kania demanded that he be tried by 24 March, the next day, or that the charges be dismissed. The court observed that its Kania file did not contain the request, that the county had more than one file on Kania, and that the request may have been misfiled. Judge Backes made no reference to the proceedings before County Judge Cooke. Neither did the state's attorney or counsel call this to his attention. The court also noted that in scheduling cases a two-month lapse, at least, is common and as a result this case could not be scheduled within the 90 days from 24 December 1982.

After some more discussion between the court and counsel, the court said, "I am going to continue this matter until April 4 [1983] under [NDCC § ] 29–33–03. I am going to rule that good cause has been shown in open court, and the Court is granting an additional period of time, to April 4, to try this matter." Defense counsel then stated that he would be unable to appear on the 4 April date because of a schedule conflict and asked for a continuance.[2] The court did not deny the request for a continuance and assigned Judge Leclerc to the case and adjourned without setting a trial date, but asked counsel to agree on a specific date.

The court administrator, Hinnen, then wrote to the parties stating that the trial had been set for 25 April 1983. Later he advised by letter that a mistake had been made and the trial was rescheduled for 2 May.

Pretrial motions were set to be heard before Judge Leclerc, but he recused himself and Judge Garaas was assigned to the case.

On 30 March the parties appeared before Judge Garaas to consider pretrial motions. Kania informed the court that the clerk's office had found his request just prior to this proceeding, 30 March, and that the request had apparently been misfiled. Kania then made a motion to dismiss the charges on the ground that the State had not complied with the Act. The court denied Kania's motion and again found good cause for granting a continuance because the request had been misfiled and the court's schedule was such that the case could not be heard as scheduled. The court rescheduled Kania's trial for 23 May, the court's earliest available date.

A jury found Kania guilty of the forgery charges on 24 May and he was subsequently sentenced to three years in the state penitentiary.

On appeal Kania argued that the conviction should be reversed and the charges dismissed on the grounds that the State did not have the charge against him tried within ninety days and thus did not comply with the Act. Specifically, Kania contended that the extension and rescheduling of his trial beyond 24 March was in violation of the Act and therefore the charge against him should have been dismissed.

The Act requires the person having official custody of the prisoner against whom a charge is filed to forthwith send, by registered or certified mail, return receipt requested, a copy of the request to the court and to the prosecuting official. NDCC § 29–33–02. The court in this instance is not identified, but NDCC § 29–33–01(1) specifically provides that the request shall be addressed to the court in which the indictment, information, or complaint is

---

**2.** Counsel also stated that Kania had agreed to a continuance orally by telephone. However, when counsel followed this up with a written confirmation Kania refused to sign it and wrote a letter to that effect. Regarding stipulations

and agreements by counsel see *State v. Carlson,* 258 N.W.2d 253 (N.D.1977), which concludes that counsel may enter into stipulations and agreements.

pending and to the prosecuting official charged with the duty of prosecuting the charge.

In *State v. Carlson,* 258 N.W.2d 253, 257 (N.D.1977), we said:

"The request must be filed with the proper court and served upon the prosecutor. *Ekis v. Darr,* 217 Kan. 817, 539 P.2d 16 (1975). Service upon the prosecutor is essential. See *State v. Moore,* 521 P.2d 556 (Utah 1974). As to the proper court to be notified, there appears to be some difference of opinion. See *Brimer v. State,* 195 Kan. 107, 402 P.2d 789 (1965); *State v. Goetz,* 187 Kan. 117, 353 P.2d 816 (1960); *State v. Moore,* 521 P.2d 556 (Utah 1974); *State v. Clark,* 28 Utah 2d 272, 501 P.2d 274 (1972)."

In *Brimer v. State, supra,* the complaint and subject matter came under the jurisdiction of the city court, and unless the defendant waived preliminary examination and an information was filed in the district court charging him with forgery, the district court did not have jurisdiction to try those charges. Thus, the question whether or not the request had been sent to the proper court became an issue. The defendant had not sent the request to the proper court, the city court in this instance. The court concluded that the defendant failed to comply with the Uniform Mandatory Disposition of Detainers Act and, as such, he waived his rights under the Act and was not in a position to rely upon the provisions of the Act.

In the instant case the complaint was in county court. The district court in this case acquired jurisdiction only after the preliminary hearing resulted in the defendant being bound over to the district court. However, a district court may acquire jurisdiction if the defendant waives preliminary hearing. A similar thought is expressed in *State v. Moore,* (a 3–2 decision) 521 P.2d 556, 558 (Utah 1974). The majority opinion stated:

"After further consideration and examination of the statute we conclude that the 90-day period commences the day the defendant notified the county attorney of his request for final disposition of a case or cases pending against him, and the filing of a complaint, information or indictment does not affect the commencement of that period. The procedure of dismissing a complaint or an information and thereafter filing a complaint or an information charging the identical offense cannot be used by a prosecutor to avoid a mandate of the statute as was done in this case."

A strong dissenting opinion was filed in this case.[3]

In *State v. Clark,* 28 Utah 2d 272, 501 P.2d 274, 277 (1972), the concurring opinion stated:

"It therefore appears to be both logical and in precise conformity with the language of the statute that in the procedure on a felony the 'appropriate court' to be given notice is the district court, which is the court obliged to comply therewith. It also seems obvious that a demand could properly be filed with the district court only after it had acquired

---

**3.** In *State v. Moore,* 521 P.2d 556, 559 (Utah 1974), a strong dissenting opinion was filed, which stated:

"Suppose one in prison murders the warden and as soon as a complaint is filed demands trial. A preliminary hearing is held, and due to the absence of material witnesses the justice of the peace dismisses the complaint and discharges the defendant; or suppose the magistrate deliberately holds the matter under advisement until after the expiration of the 90-day period. Is the defendant freed from further prosecution if additional evidence is thereafter discovered? Under the rule announced in the prevailing opinion the murderer would be freed after the elapse of 90 days from demand, and this in spite of the fact that the justice of the peace could not make a *final* disposition of the matter."

The dissenting opinion relied upon *Foley v. United States,* 290 F.2d 562, *cert. denied,* 368 U.S. 888, 82 S.Ct. 139, 7 L.Ed.2d 88 (1961); *State v. Enriquez,* 102 Ariz. 402, 430 P.2d 422 (1967); *State v. Belcher,* 25 Utah 2d 37, 475 P.2d 60 (1970); and *State v. Clark,* 28 Utah 2d 272, 501 P.2d 274 (1972).

This illustrates that the need for clarification exists, and if accomplished would eliminate some of these uncertainties.

jurisdiction by the filing of the indictment or information.

"It should be pointed out further that if the defendant's contention were correct, there could well be exigent circumstances in which nearly all of the ninety day period (or even beyond it) may have elapsed before the defendant is bound over to the district court, and before the information is filed therein. In such a situation, because of delays which may have occurred for any cause whatsoever, the district court would have very little time to act. In fact the entire 90 days could have elapsed, so that defendant's interpretation would require the district court to act before it ever acquired a jurisdiction. This could create a situation much more difficult for the prosecution to cope with in felony than in misdemeanor cases."

These cases illustrate that the Act is subject to two different constructions as to when the ninety-day period begins to run and which is the proper court for purposes of giving notice. However, because District Judge Backes granted the continuance or extension on 23 March 1983, within the ninety days from the date the prosecutor (state's attorney) received the request, this question is not ripe for our determination.

Our basic question is whether or not the court justifiably continued or extended the time. The Minnesota Supreme Court, in *State v. Hamilton,* 268 N.W.2d 56 (Minn. 1978), in a footnote, stated:

"... [The] grant of a continuance in an ordinary case [is] within the sound discretion of the trial judge, whose decision will be reversed only for abuse of discretion. *State v. Fagerstrom,* 286 Minn. 295, 176 N.W.2d 261 (1970); *State v. Bell,* 275 Minn. 541, 146 N.W.2d 597."

■ Legal logic dictates sound discretion is the proper standard to be applied on the question whether or not good cause existed for extension or continuance, and that an appellate court will not reverse such decision except in instances where the trial judge abused his discretion. We have repeatedly stated that abuse of discretion is the equivalent of acting unreasonably, arbitrarily or unconscionably.

■ In *State v. Carlson,* 258 N.W.2d 253 (N.D.1977), relying upon *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), we set out the following factors which are to be considered in determining whether a defendant has been deprived of his right to a speedy trial under the Constitution. These factors are: (1) length of delay; (2) reason for delay; (3) defendant's assertion of his right; and (4) prejudice to the defendant. We believe these factors are also pertinent in determining if the extension or continuance of the trial constituted good cause.

We will now consider what were the contributing factors that brought about the extension of time or the continuation for trial as granted by the district court on 23 March 1982.

■ Initially, we start with the presumption that the defendant acted pursuant to and in accordance with the Act. Any misfiling or failure to bring the request to the attention of the district court cannot be attributed to the defendant.[4] The state's

---

**4.** This points to the lack of communication and sense of direction particularly with the statutory requirement directing that the request be sent to the court. We think it is generally understood that when the term "court," which is a generic term, is used in the statute requiring the document to be filed with the court, the practitioner assumes that to mean to file with the clerk of court and that is, in reality, the equivalent of informing or giving information to the court. However, a further problem exists especially for the lay person, and that is: Which court is involved?

The difficulties encountered with this situation are multiplied with our two-tiered system because, generally, a person charged with a felony makes an initial appearance before the county court and, only after proper proceedings, the defendant is bound over to district court. However, the problem does not end at this point. In districts which have multiple judges, what is the duty and function of the clerk of court? The clerk of court does not have any idea which judge will be assigned to hear the case. In addition, the clerk of court, upon receiving the request from the defendant under the Act in the first instance may not have a file in which such

attorney had acquired temporary custody of the defendant. However, pursuant to Kania's request he was returned to the penitentiary, 200 miles away, denying immediate access, which did not militate in favor of an early trial. The defendant expressed dissatisfaction with appointed counsel. This created the need for appointment of new counsel who had to start from square one, which did not help or promote a speedy trial. In addition, the defendant's displeasure with Judge McGuire, causing the Judge to recuse himself, developed a further delay because the judge later assigned to try the case (Leclerc) also recused himself. As a result, the reassignment of the case to another judge was necessary and the newly assigned judge's schedule was such that the matter could not be tried promptly. The defendant may not insist that some other party in another action give up his date for trial just to accommodate the defendant.

We believe the foregoing factors contributed substantially to the court concluding that good cause existed for the continuation or extension of the time for trial on 23 March 1983. The subsequent extensions or continuances were primarily the result of defendant's counsel not being able to meet the trial date set requiring a change of dates, which in turn created problems for the State, which necessitated a further extension.

On the foregoing basis, we conclude that good cause existed justifying the order of the court issued on 23 March 1983 extending or continuing the trial and that the trial court, in doing so, did not abuse its discretion.

■ The record, particularly the proceedings before the county court on 27 December 1982, clearly indicates that the county court had actual notice of the defendant's request under the Act and acted accordingly.[5] The district court acted within ninety days from the date the state's attorney received notice of the request, even though an argument can be made that the ninety days did not begin to run until the information was filed with the district court, which otherwise only received notice through the notice to the clerk of district court. We have earlier concluded that the extension or continuation was for good cause and, as a result, the contentions of the defendant are without merit. Accordingly, the conviction is affirmed.

ERICKSTAD, C.J., and PEDERSON, VANDE WALLE, and H.F. GIERKE, JJ., concur.

request may be placed. The clerk of district court will make a file only after the defendant has been bound over to district court for trial or after an indictment or information has been filed. Even if the defendant is bound over to the district court for trial, the clerk of court does not know which judge will be assigned to the case. Furthermore, in those districts having court administrators the assignment is actually conducted by the court administrator, but the clerk of court is under no obligation to advise the court administrator that a request under the Detainers Act has been filed. We also note that the statute predates the creation of district court administrators. These items merely illustrate the difficult or impossible situation the clerk of court is put in under the present setup. It also illustrates that the notice to the court cannot be considered to be, in a sense, jurisdictional. At most, it can be considered only as being informative. The court is expected to accommodate an early trial. The duty of moving forward with the trial rests primarily, upon the state's attorney or prosecutor. The court is in no position (judicially) to compel the trial to be held within the ninety days, and if the court were to insist that it be tried within the ninety days an argument could be made by the defendant that it is not ready for trial and, as a result, was denied a fair trial. We are aware that the Act provides for a continuance for good cause, etc. It is basically the duty and responsibility of the prosecutor to initiate whatever steps are necessary to have the matter tried within the ninety days.

5. The Legislature might wish to amend the statute to alleviate some of these problems.